UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel*<br>**Dañilo Augusto Feliciano**<br>**Plaintiff-Appellant**<br><br>**v**<br><br>**ROBERT KYLE ARDOIN,**<br>**Louisiana Secretary of State**<br><br>and<br><br>**DOMINION VOTING SYSTEMS CORPORATION, DOMINION VOTING SYSTEMS INC., and DOMINION VOTING SYSTEMS INTERNATIONAL CORPORATION**<br>**Appellee-Defendants** | ) | **Civil Case No. 1:23-cv-03467**<br>**Appeal Case No. 24-7134**<br><br>**APPENDIX TO THE BRIEF** |

RECEIVED
NOV 06 2024
UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

## PLAINTIFF-APELLANT'S APPENDIX TO THE BRIEF

## CHRONOLOGICAL INDEX

| Document | Document Date | Brief Page | Exhibit Number |
|---|---|---|---|
| 2018 Memorandum to the United States Election Assistance Commission | 27 June 2018 | 6 | 1 |
| 2020 Memorandum to the United States Election Assistance Commission | 14 February 2020 | 6 | 2 |
| 2022 Memorandum to the United States Election Assistance Commission | 4 April 2022 | 6 | 3 |
| Article, "La. Secretary of State Says Elections Secure Without Paper Ballots" | 8 March 2020 | 7 | 4 |
| Action filed by Danilo Augusto Feliciano on behalf of the United States of America | 17 November 2023 | 6 | 5 |

| | | | |
|---|---|---|---|
| Notice of Declination and Suggestion for Dismissal by the United States Attorney's Office | 3 July 2024 | 7-12 | 6 |
| Order by the United States District Court for the District of Columbia | 29 July 2024 | 5, 8-10 | 7 |

## ALPHABETICAL INDEX

| Document | Document Date | Brief Page | Exhibit Number |
|---|---|---|---|
| 2018 Memorandum to the United States Election Assistance Commission | 27 June 2018 | 6 | 1 |
| 2020 Memorandum to the United States Election Assistance Commission | 14 February 2020 | 6 | 2 |
| 2022 Memorandum to the United States Election Assistance Commission | 4 April 2022 | 6 | 3 |
| Article, "La. Secretary of State Says Elections Secure Without Paper Ballots" | 8 March 2020 | 7 | 4 |
| Action filed by Danilo Augusto Feliciano on behalf of the United States of America | 17 November 2023 | 6 | 5 |
| Notice of Declination and Suggestion for Dismissal by the United States Attorney's Office | 3 July 2024 | 7-12 | 6 |
| Order by the United States District Court for the District of Columbia | 29 July 2024 | 5, 8-10 | 7 |

Respectfully submitted,

Dañilo Augusto Feliciano
1313 New York Avenue NW
Basement
Washington, DC 20005
202-505-1841
daniloafeliciano@gmail.com
*in propria persona*

**EXHIBIT 1**

SECRETARY OF STATE
STATE OF LOUISIANA

R. KYLE ARDOIN
SECRETARY OF STATE

P.O. BOX 94125
BATON ROUGE, LA 70804-9125
225.922.2880

June 27, 2018

Mr. Brian Newby, Executive Director
U.S. Election Assistance Commission
1335 East-West Highway, Suite 4300
Silver Spring, MD 20910

RE: 2018 HAVA Election Security Grant - State of Louisiana.

Dear Mr. Newby:

The purpose of this letter is to certify that the State of Louisiana will use the funds provided under the Notice of Grant Award, Agreement #LA18101001, for activities consistent with the laws described in Section 906 of HAVA and will not use the funds in a manner that is inconsistent with the requirements of Title III of HAVA.

We further certify that we have reviewed and accept the terms of the award as specified in the Notice of Grant Award. Our UEI number (formerly DUNS) is 136983835 and the signed Certification Regarding Lobbying is enclosed.

We are requesting $5,889,487 at this time. The Program Narrative which sets forth how the State of Louisiana will use the funds and the Budget Worksheet are also enclosed.

If you have any questions about this request, please contact Melissa Thibodeaux, Budget Analyst, at 225-362-5144 or melissa.thibodeaux@sos.la.gov.

Sincerely,

R. Kyle Ardoin
Secretary of State
State of Louisiana

CC: Mark Abbott, Director of Payments and Grants

**EXHIBIT 2**

SECRETARY OF STATE
STATE OF LOUISIANA

R. KYLE ARDOIN
SECRETARY OF STATE

P.O. BOX 94125
BATON ROUGE, LA 70804-9125
225.922.2880

February 14, 2020

Mona Harrington, Acting Executive Director
U.S. Election Assistance Commission
1335 East-West Highway, Suite 4300
Silver Spring, MD 20910

RE: 2020 HAVA Election Security Grant - State of Louisiana

Dear Ms. Harrington:

The purpose of this letter is to certify that the State of Louisiana will use the funds provided under the Notice of Grant Award, Agreement #LA20101001, for activities consistent with the laws described in Section 906 of HAVA and will not use the funds in a manner that is inconsistent with the requirements of Title III of HAVA.

We further certify that we have reviewed and accept the terms of the award as specified in the Notice of Grant Award. Our UEI number (formerly DUNS) is 136983835 and the signed Certifications are enclosed.

We are requesting $6,622,612 at this time. We will develop the program narrative as follows: The Louisiana Secretary of State's office, which will include our Legal and Elections divisions, will meet to discuss the requirements of how the HAVA funds are to be spent and how those parameters will best be applied to our department. The project narrative and budget will then be compiled based on those findings and will be submitted to the EAC by the April 27, 2020 deadline.

If you have any questions about this request, please contact Laura Sanders, Budget Administrator, at 225-362-5156 or laura.sanders@sos.la.gov.

Sincerely,

R. Kyle Ardoin
Secretary of State
State of Louisiana

CC: Peg Rosenberry, Grants Consultant

**EXHIBIT 3**

# SECRETARY OF STATE
## STATE OF LOUISIANA

R. KYLE ARDOIN
SECRETARY OF STATE

P.O. BOX 94125
BATON ROUGE, LA 70804-9125
225.922.2880

April 4, 2022

Mark Robbins, Interim Executive Director
U.S. Election Assistance Commission
633 3rd Street, NW, Suite 200
Washington, DC 20001

RE: 2022 HAVA Election Security Grant - State of Louisiana

Dear Mr. Robbins:

The purpose of this letter is to certify that the State of Louisiana will use the funds provided under the Notice of Grant Award, Agreement #EAC-ELSEC18LA, for activities consistent with the laws described in Section 906 of HAVA and will not use the funds in a manner that is inconsistent with the requirements of Title III of HAVA.

We further certify that we have reviewed and accept the terms of the award as specified in the Notice of Grant Award. Our UEI number (formerly DUNS) is 136983835 and the signed Certifications are enclosed.

We are requesting $1,006,388 at this time. We will develop the program narrative and combined Election Security program budget by the required timeline in the 2022 ES Award Packet and Instructions.

If you have any questions about this request, please contact Laura Sanders, Accountant Administrator, at 225-922-1229 or laura.sanders@sos.la.gov.

Sincerely,

R. Kyle Ardoin
Secretary of State
State of Louisiana

CC: Kinza Ghaznavi, Grants Director, Grants@eac.gov

**EXHIBIT 4**

Biz
NEW ORLEANS

Homepage

# La. Secretary of State Says Election Secure Without Paper Ballots




BATON ROUGE – Louisiana Secretary of State Kyle Ardoin hopes to acquire electronic voting machines that also record votes on paper, though he said this year's elections will be secure even without a paper trail.

Ardoin spoke Thursday evening at a panel hosted by LSU's Manship School of Mass Communications. Panelist Susan Greenhalgh, policy advisor for the National Election Defense Coalition, said digital-only voting is the "most concerning" method from a security standpoint. Critics say Louisiana voting machines' lack of a paper component goes against the national trend and violates best practices.

Greenhalgh said voting machines can malfunction and can be "maliciously infected" even if they're not connected to the internet. Paper ballots allow voters to see for themselves that their vote was tallied correctly, while a "black box" voting machine does not, she said.

- Sponsors -

Paper backups also can be used to audit the electronic results, Greenhalgh added.

"We need to trust the process," she said.

Ardoin said problems with paper ballots in the 2000 Bush-Gore presidential election led the federal government to push states toward electronic voting. He blamed the 2016 election, in which "some people didn't like the outcome" and "perhaps believe it was stolen," for recent distrust of electronic voting machines.

- Partner Content -

Ardoin said paper ballots have their own security issues.

"The more you use paper, the more you have the possibility of finding ballots," he said, putting "finding ballots" in air quotes.

Ardoin's office currently is working on a request for proposals for new voting machines. State procurement officials scrapped a 2018 contract award for new machines, saying the office failed to follow protocols meant to protect the integrity of the selection process.

- Sponsors -

Ardoin said he expects through the new RFP to find a "middle ground" between all-paper and all-electronic voting. The new system won't be available for this year's elections, forcing the state to rely on aging machines and leased equipment.

But Ardoin expressed confidence in Louisiana's election security. He said he likes the current system, which has "served our state very well."

He said the state's machines have never been connected to the internet and leased machines are wiped clean and reprogrammed. Every machine is publicly tested from "top to bottom" with each parish's board of election supervisors, he said.

"For the comfort of voters, I certainly agree that a paper component is important to the process," he said.

**By David Jacobs of the Center Square**

**EXHIBIT** 5

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** *ex rel* **Danilo Augusto Feliciano** **Plaintiffs** | ) | **Civil Case No. 23-3467 (CJN)** |
| v | ) | |
| **ROBERT KYLE ARDOIN, Louisiana Secretary of State** 8585 Archives Ave Baton Rouge, LA 70809 | ) | **FALSE CLAIMS ACT COMPLAINT; FILED IN** ***CAMERA*** **UNDER SEAL PURSUANT TO 31 U.S.C. 3730(b)(2), and Fed. R. Civ. P. 4 (d)(4)** |
| and | ) | **REQUEST FOR JURY TRIAL** |
| **DOMINION VOTING SYSTEMS CORPORATION, DOMINION VOTING SYSTEMS INC., and DOMINION VOTING SYSTEMS INTERNATIONAL CORPORATION** 410 17th St Suite 850 Denver, CO 80202 **Defendants** | ) | |

NOW COMES Plaintiff and *Qui Tam* Relator Danilo Augusto Feliciano, also known as DANIL EZEKIEL FAUST (hereinafter the "Advocate" or the "Relator"), as one of the people, does hereby in this Court of record individually and on behalf of and for the benefit of the United States of America, file under seal this complaint pursuant to the False Claims Act on March 2, 1863, 12 Stat. 696 (31 U.S.C. § 3730(b)) and alleges as follows:

## INTRODUCTION

This complaint alleges a long-standing and willfully unresolved injury that has been done and continues to be done to the people of the State of Louisiana and the United States of America based upon the defendants use of electronic voting systems that do not produce permanent paper records that are manually auditable in the event that recounts are requested by parties in elections. The State of Louisiana is and has been fully aware of this requirement since at least

2005 and yet has continued to use election systems that were made in the year 1990 in the vast majority of the federal and state elections in Louisiana.

1. The electronic ballots cast in Louisiana elections do not have a permanent paper record generated and stored contrary to public law and agreed to by the State of Louisiana to receive federal funds. Because this record does not exist, there can be no certainty regarding the accuracy of elections in Louisiana. Louisiana is the only state that lacks any permanent paper record of elections.[1]
2. Without an individual paper record, there is no proof that a vote has not been altered or the number of votes changed. "Not only can this right to vote not be denied outright, it cannot, consistently with Article I, be destroyed by alteration of ballots, see *United States v. Classic*, 313 U.S. 299, or diluted by stuffing of the ballot box, see *United States v. Saylor*, 322 U.S. 385." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). There can be no denial that there have been voting machines kept in the private office of a Registrar of Voters. This was investigated by the Department of Justice[2][3] yet no action took place. Nor was this an isolated incident, the Elections Advisory Committee has discovered AVC Advantage voting machines missing and in the wrong locations in 2011.[4] **[Exhibit 1]**
3. Without a paper record to audit the election results and unfettered private access to voting equipment, there can be no "chain of evidence connecting… summary results to original transactions".[5] **[Exhibit 2]**

---

[1] "Louisiana's the final state with a paperless voting system", Marks, Joseph, 9 December 2021, The Washington Post, https://www.washingtonpost.com/politics/2021/12/09/louisiana-final-state-with-paperless-voting-system/

[2] Forrest McBride, "FBI investigating 'VIP' voting machine in Jefferson Parish" KLFY, 28 October 2016, https://www.klfy.com/louisiana/fbi-investigating-vip-voting-machine-in-jefferson-parish/

[3] Stephanie Grace, "Grace Notes: A private voting machine? How undemocratic", The Advocate, 4 November 2016, https://bit.ly/3s6XnUi

[4] "Final EAC Management Decision Louisiana E-HP-LA-03-10" https://bit.ly/473wwqU

[5] U.S. Election Assistance Commission, "EAC Advisory 2005-005: Lever Voting Machines", 8 September 2005, https://www.eac.gov/sites/default/files/eac_assets/1/6/EAC%20Advisory%20Lever%20Voting%20Machines%202005-005.pdf

## JURISDICTION AND VENUE

4. Plaintiff and *Qui Tam* Relator Danilo Augusto Feliciano files this action on behalf and in the name of the United States of America seeking damages and civil penalties against the defendants for violations of 31 U.S. Code § 3729(a).
5. This Court's jurisdiction over the claims for violations of 31 U.S.C. § 3729(a) is based upon 31 U.S.C. § 3732(a). Venue is vested in this Court under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because at least one of the defendants can be found in, resides in and/or transacts business in Washington, D.C. and is party to multiple cases in the Washington, D.C. area. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is a diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

## PARTIES

6. Advocate Danilo Augusto Feliciano is also known as DANIL EZEKIEL FAUST and DANIL (NMN) BERGER. He is a citizen of the United States and a resident of Washington, D.C. He is also a veteran of the United States Army, 1st Cavalry Division. The Advocate brings this action on behalf of the Government under 31 U.S.C. § 3730(b).
7. The Advocate is an original source of information and has direct and independent knowledge of the allegations of fraud and has voluntarily provided the information to the United States prior to filing the *Qui Tam* action.
8. Defendant ROBERT KYLE ARDOIN (hereinafter "ARDOIN"), is the Secretary of State for Louisiana. This complaint is filed against him in his official capacity.
9. Defendant DOMINION VOTING SYSTEMS, INC. ("Dominion US") is a corporation formed under the laws of Delaware with its principal place of business in Denver, Colorado and includes its successors and assigns its subsidiaries, its divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents and employees.
10. Defendant DOMINION VOTING SYSTEMS CORPORATION (hereinafter "Dominion Canada") is a corporation formed under the laws of Toronto, Ontario with its principal place of business in Toronto, Ontario, Canada and includes its successors and assigns its

subsidiaries, its divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents and employees.

11. Defendant DOMINION VOTING SYSTEMS INTERNATIONAL CORPORATION (hereinafter "Dominion Barbados"), is a corporation formed under the laws of Barbados with its registered office at "The Grove, 21 Pine Road, Belleville, St. Michael, BB11113, Barbados" and a mailing office of "#2 Rendezvous Road, Worthing, Christ Church, Barbados, BB15006" and includes its successors and assigns its subsidiaries, its divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents and employees. (Hereinafter, Dominion Voting Systems Corporation, Dominion Voting Systems Inc. and Dominion Voting Systems International Corporation shall be referred to as "DOMINION")

## LEGAL BACKGROUND

### I. The Help America Vote Act ("HAVA")

12. The Help America Vote Act of 2002 (Pub. L. 107–252, 42 U.S.C. ch. 146 § 15301 *et seq* transferred to 52 U.S.C. §§ 20901–21145 *et seq* enacted 29 October, 2002 and incorporated by reference), or HAVA, is United States federal law passed by the United States Congress to enhance election integrity after the 2000 election controversy that was settled by the Supreme Court in *Bush v. Gore*, 531 U.S. 98 (2000). The Act provided funding to States to "assist in the administration of Federal elections" and "establish minimum election standards for States."

    a. HAVA Title II Section 253(b)(2)(A) (52 U.S.C. § 21003(b)(2)(A)) requires the implementation of a "uniform, nondiscriminatory administrative complaint procedure."

    b. HAVA Title II Section 253(b)(4)(A) (52 U.S.C. § 21003(b)(4)(A)) requires that the "State's proposed uses of the requirements payment are not inconsistent with the requirements of title III"

    c. HAVA Title III Chap 301(a)(2)(B)(i) (52 U.S.C. § 21081(a)(2)(B)(i)) requires that "The voting system ***shall*** produce a ***permanent paper record*** with a ***manual audit capacity*** for such system" (emphasis added)

d. HAVA Title III Chap 301(a)(2)(B)(iii) (52 U.S.C. § 21081(a)(2)(B)(iii)) requires that a "***paper record*** produced under subparagraph (A) shall be available as an ***official record for any recount*** conducted with respect to ***any election in which the system is used.***" (emphasis added)

e. The administrative complaint procedure in Section 253 was outlined in Section 402(a)(2)(B) as "any person who believes that there is a violation of any provision of title III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint" and that the "shall be in writing and notarized, and signed and sworn by the person filing the complaint."

13. The Office of the Assistant Attorney General wrote on 10 May 2005[6] in response to Angie Rogers LaPlace, the Louisiana Commissioner of Elections and Merietta Spencer Norton, the General Counsel for the Office of the Secretary of State that:

> "You inquire whether Section 301 requires Louisiana merely to have *purchased* such a system by January 1, 2006 (the effective date of the Section), or whether the State must actually have the new voting system *ready for use* by that date. In our judgment, it is the latter." **[Exhibit 3]**

14. Elections Advisory Committee, (hereinafter "EAC"), EAC Advisory 2005-005: Lever Voting Machines and HAVA Section 301(a)[7] released on September 8, 2005 stating that "HAVA makes it clear that the reason it requires a paper record trail is to ensure all voting systems create a permanent, manually auditable record for use in a recount." The official advisory goes on to state that the document must be a "chain of evidence connecting… summary results to original transactions." The advisory also claims that "A document is not an appropriate audit tool when it is, itself, a summary that cannot show the original actions that make up its whole."

## II. The Civil Rights Act of 1960

15. The Civil Rights Act of 1960 (Pub. L. 86–449, 74 Stat. 89, enacted May 6, 1960, 52 U.S.C. § 20701 – 20706 transferred from 42 U.S.C. § 1974 *et seq* and incorporated by reference) is a

---

[6] Hans A. von Spakovsky, U.S. Department of Justice, Memorandum, 10 May 2005, https://www.justice.gov/crt/help-america-vote-act-13

[7] See #4, above

United States federal law that established federal inspection of local voter registration polls and introduced penalties for anyone who obstructed someone's attempt to register to vote. 52 U.S.C. § 20701 requires that every election officer to maintain and preserve all records and papers which are required in voting for twenty-two months, while 52 USC § 20703 grants authority for the Attorney General or his representative to demand any records required by 52 U.S.C. § 20701.

**ORIGINAL INFORMATION**

16. On 31 December 2018, the Advocate submitted a signed and notarized HAVA complaint stamped and notarized that it was a "TRUE AND CORRECT COPY" of the original to ARDOIN detailing the requirements of Section 301 of HAVA for a "permanent paper record" as provided in LA RS 18§567.2 which states that the complaint is to be "in writing, signed by the complainant, executed before a notary public, and sworn under oath"
17. On 3 January 2019, the Advocate submitted an additional request for a hearing in front of the Louisiana Board of Elections regarding the matter as listed in LA RS 18§567.3(F) that states "At the request of the complainant, the board shall conduct a hearing on the record. The request shall be made in writing to the secretary of state no later than ten days after the filing of the complaint."
18. On 14 January 2019, the Advocate received a letter from LANI B. DURIO, Deputy Commissioner of Elections, Louisiana Department of State that read "your form has been rejected for filing because it is a copy and not the original signed and notarized complaint."[8]
19. On 28 February 2019, the Advocate received a second letter from Ms. Durio that stated the original response had not been verified as being received and the second letter was sent out of an "abundance of caution" and included several notices regarding penalties about campaign filings stamped "TRUE COPY".

---

[8] The text of LA Rev Stat § 18:567.2 (B) (2018) states: "The complaint shall be in writing, signed by the complainant, executed before a notary public, and sworn under oath. The complaint shall provide the name and mailing address of the complainant and shall include a description of the alleged violation that is sufficiently detailed to put the board and the respondent on notice of the nature of the alleged violation." The document sent was a true and correct copy with an original notary stamp as such.
https://law.justia.com/codes/louisiana/2018/code-revisedstatutes/title-18/rs-18-567.2/

20. On September 2019, Louisiana began using new elections equipment for early voting, the ImageCast X (ICX), while these voting systems can produce the permanent paper record required by Title III of the Help America Vote Act of 2002, the State of Louisiana does not require the production of these documents.[9]

21. On 23 December 2020, the Advocate delivered three envelopes of information for a Petition for a *Writ of Inquisition of Life and Limb* and a *Writ of Oyer and Terminer* to the Supreme Court of the United States in order to provide a basis for the Dominion Voting Machines to be seized in the state of Louisiana.

22. On 2 January 2021, President Donald John Trump made a phone call to Georgia Secretary of State Brad Raffensperger and in this call stated that there was a way to seize Dominion Voting Machines, "but I don't want to get into it. We found a way in other states excuse me, ... I personally think they're corrupt as hell" and that "I'm not looking to shake up the whole world."[10] In other words, the proof of impropriety has always been available to the Republican party. It should not be left without mention that the Republican Majority Leader, Steve Scalise, is from Louisiana, the Speaker of the House, Mike Johnson, is from Louisiana, while the Campaign Manager for President Joseph R. Biden, Cedric Richmond is from Louisiana.

23. On 6 September 2022, the HAVA Complaint form sent by the Advocate was received by the Louisiana Secretary of State's office regarding the ongoing lack of the production of the permanent paper record required by HAVA in order for the state of Louisiana to receive federal funds.

24. On 1 November 2022, the Advocate cast his electronic ballot in the 2022 Federal Election for United States Senator for the State of Louisiana.

---

[9] Cybersecurity & Infrastructure Security Agency, ICS Advisory ICSA-22-154-01, dated 3 June 2022, https://www.cisa.gov/news-events/ics-advisories/icsa-22-154-01

[10] CNN Politics, "Read the full transcript and listen to Trump's audio call with Georgia secretary of state", 3 January 2021, https://www.cnn.com/2021/01/03/politics/trump-brad-raffensperger-phone-call-transcript/index.html

25. On 28 November 2022, CONNOR JUNKIN, Elections Counsel for ARDOIN sent an electronic mail message stating that "pursuant to La. R.S. 18:567.2… such complaints must be filed within 90 days after the final certification of the federal elections."[11] **[Exhibit 4]**
26. On 16 December 2022, the Advocate mailed another HAVA Complaint form and a letter informing the Louisiana Secretary of State once again detailing the ongoing violation of the HAVA. **[Exhibit 5]**
27. On 16 December 2022, the Advocate submitted a request for a hearing on the record determining the existence of the permanent paper record required by law to the Louisiana Board of Elections. **[Exhibit 6]**
28. On 20 December 2022, in an attempt to exhaust all available remedies, the Advocate was forced to file a bankruptcy case under Chapter 7 of 11 U.S.C. 101-1330 (*In re: DANIL EZEKIEL FAUST* Case No. 22-00233-ELG) to verify the non-compliance of the State of Louisiana in their willing and persistent failure to produce the permanent paper records required by the Help America Vote Act, Title III, Section 301 (a)(2)(B)(i). The Advocate had no intention of filing bankruptcy otherwise.
29. On 11 January 2023, the Advocate notified Secretary Ardoin of his demand for the permanent paper record required by HAVA. **[Exhibit 7]**
30. On 6 February 2023, the Advocate received a letter from SHANIKA OLINDE, the Pointee Coupee Registrar of Voters for the State of Louisiana rejecting the HAVA complaint due to a typo listing the date of the 2022 election as 2023.[12]
31. On 9 February 2023, the Advocate sent a request through electronic mail and the United States Postal Service to Ms. Olinde detailing reasons why the complaint should still be reviewed. **[Exhibit 8]**

---

[11] This is false. The text of the LA Rev Stat § 18:567.2 (A) (2021) states: "Any person who believes that there is a violation by any state or local election official of any provision of Title III may file a complaint, including a violation which has occurred, is occurring, ***or is about to occur***. The complaint procedures set forth in this Subpart are limited to allegations of violations of Title III in a federal election." (emphasis added) https://law.justia.com/codes/louisiana/2021/revised-statutes/title-18/rs-567-2/

[12] 6 February 2023 is exactly 90 days after 8 November 2022, the date of the Louisiana Federal Election.

32. On 13 February 2023, the Advocate submitted a Notice and Demand to the Secretary of State of Louisiana providing notification that the intent to pursue legal action to retrieve the permanent paper record. **[Exhibit 9]**

33. On 13 February 2023, Mr. Junkin responded that the Advocate would need to submit a new complaint and that the last day to do so was 14 February 2023. The Advocate did not receive the electronic message until the next day and was unable to refile in time.

34. On 16 March 2023, the Advocate filed the adversarial proceeding *Faust v. State of Louisiana* Case No. 23-010010-ELG in the United States Bankruptcy Court for the District of Columbia after multiple notices regarding the *chose in action* had been sent to the Secretary Ardoin. The complaint and summons were sent to the Governor's Office for the State of Louisiana.

35. On 17 May 2023, the United States Bankruptcy Court for the District of Columbia held a hearing and subsequently issued an *Order to Dismiss Debtor's Complaint* with prejudice.

## FACTUAL BACKGROUND

## I. LOUISIANA KNOWS IT IS NOT COMPLIANT WITH HAVA TITLE III

36. On 22 May 2003, Lori Sharpe Day, Director and Advisor to the Attorney General of the United States responded to then Louisiana Governor M.J. "Mike" Foster about the Department of Justice's "responsibilities to enforce the provisions of Title III of HAVA."[13] The Inquiry by Louisiana also asked for an official definition of a "federal election" under HAVA. Which the Department of Justice memorandum stated that "Title III of HAVA applies only to elections for federal office." **[Exhibit 10]**

37. On 10 May 2005, the United States Department of Justice sent a letter to the then Louisiana Commissioner of Elections Angie Rogers LaPlace in response to her inquiry regarding the implementation of HAVA Section 301 that HAVA "unambiguously requires each state" to comply with Section 301 "on or after January 1, 2006" and that the deadline was "absolute."[14]

38. On 8 September 2005, the United States Election Assistance Commission released EAC Advisory 2005-005 which stated "***systems must create a paper record that can serve as an audit trail***" (emphasis added) and that a "***document is not an appropriate audit tool when it***

---

[13] Lori Sharpe Day, U.S. Department of Justice, Memorandum, 22 May 2003, https://www.justice.gov/crt/help-america-vote-act-10

[14] See above #6

***is, itself, a summary that cannot show the original actions that make up its whole.***"[15] (emphasis added)

39. In 2011, an audit was performed by the EAC of Louisiana's election department. The audit found internal cost control deficiencies and missing items that included laptops and AVC Touchscreen machines. "One AVC Touchscreen machine was not located in the warehouse and was later found in another parish without a record of move sheet."[16]
40. On or about 25 October 2016, two private voting machines that used by the Jefferson Parish Registrar of Voters Dennis DiMarco for some "VIP voters" was reported by Robert Evans to the Department of Justice and the FBI. According to Mr. DiMarco ""It's really a convenience for those whose time is, for lack of a better word, maybe more valuable than others,"[17] The list of voters who used this machine included a State Representative, a Deputy Sheriff, the Parish Director of Risk Management and others.
41. On 27 October 2016, after being informed of a complaint by the U.S. Department of Justice, Secretary of State Tom Schedler sent a letter to Dennis DiMarco stating that he had "instructed my staff to take custody of the Edge machine in question."
42. Louisiana Rev Stat § 18:152 (2022) is entitled "required records". This statute fails to include any rules requiring the permanent paper record to be used in federal elections.
43. LA Rev Stat § 18:158 (B) (2022) "retention of registration records for federal elections" does not require the permanent paper record.

> The registrar of voters in each parish shall keep and maintain for a period of twenty-two months from the date of the election ***all applications for registration and registration records received for purposes of voting*** in an election involving the office of President of the United States, Vice President of the United States, presidential elector, United States Senator, or United States Representative.

44. Louisiana Rev Stat § 18:158 (B) was last altered on the 1st of January 2006. Louisiana has never intended to be compliant with Title III of the HAVA.

## II. LOUISIANA HAS REQUESTED HAS HAVA FUNDS UNDER TITLE III

---

[15] See above #4

[16] See above #3.

[17] Trey Schmaltz, "Voting machine only for VIPs confiscated by La. Secretary of State", WBRZ, 28 October 2016, https://www.wbrz.com/news/voting-machine-only-for-vips-confiscated-by-la-secretary-of-state/

45. On 24 July 2014, a report by the Elections Assistance Committee detailed the states that have certified that they have implemented requirements of Title III of HAVA (Sections 301, 302, and 303). The State of Louisiana was not included in this list. Louisiana was included in a second list that should that they were 251(b)(2)(B) Certified. This further serves to demonstrate that Louisiana knew that the state was not in compliance with Title III of HAVA.[18] **[Exhibit 11]**
46. On 26 June 2018, a revised "Federal Financial Report"[19] submitted by Carol Guidry, Director of HAVA, for the State of Louisiana shows that the total federal funds authorized for the State of Louisiana by the Elections Assistance Committee for Title II, Section 251 was $39,350,512.00. The same amount was included in the line (e) entitled "Federal share of expenditures." No mention of Title III funding was mentioned. **[Exhibit 12]**
47. On 27 June 2018, ARDOIN submitted a request for $5,889,487 from the EAC in a letter stating that the State of Louisiana will not use funds in a manner that is inconsistent with the requirements of Title III of HAVA. **[Exhibit 13]**
48. On 14 February 2020, ARDOIN submitted a request for $6,622,612 from the EAC in a letter stating that the State of Louisiana will not use funds in a manner that is inconsistent with the requirements of Title III of HAVA. **[Exhibit 14]**
49. On March 2020, ARDOIN was part of a panel hosted by LSU's Manship School of Mass Communications, where he stated that Louisiana elections are "secure even without a paper trail."[20]
50. On 4 April 2022, ARDOIN submitted a request for $1,006,388 from the EAC in a letter stating that the State of Louisiana will not use funds in a manner that is inconsistent with the requirements of Title III of HAVA. **[Exhibit 15]**

---

[18] Election Advisory Committee, Report, HAVA Title III and Minimum Payment Amount Certifications, https://www.eac.gov/sites/default/files/eac_assets/1/28/Title%20III%20and%20Minimum%20Payment%20Amount%20Certifications%209.4.15.pdf

[19] Louisiana Secretary of State, Federal Financial Report, as Revised 26 June 2018, https://www.eac.gov/sites/default/files/Grants/251-Reports/LA%20251%20Final%20Financial%20Report.pdf

[20] "La. Secretary of State Says Election Secure Without Paper Ballots" The Biz New Orleans, 8 March 2020, https://www.bizneworleans.com/la-secretary-of-state-says-election-secure-without-paper-ballots/

## III. LOUISIANA HAS REFUSED TO ACT

51. On 11 April 2023, the Louisiana Secretary of State Ardoin announced that he would not run for election citing "health reasons"[21] after the State of Louisiana and the Governor of Louisiana JOHN BEL EDWARDS were served with the adversary proceeding 23-010010-ELG in the U.S. Bankruptcy Court for the District of Columbia.

## IV. LOUISIANA HAS A LONG HISTORY OF ELECTION FRAUD ALLEGATIONS

52. In 1996, as a candidate for political office, Susan Bernecker discovered voting machines that would produce a different name than the candidate selected and took video of the event, as litigated in *Armond v. Fowler*, 694 So. 2d 358, 359 (La. Ct. App. 1996). The video was featured in the documentary "Hacking Democracy."
53. In 1999, a report was issued by the Office of the Legislative Auditor of the State of Louisiana that uncovered convincing evidence of a complicated scheme to defraud the State by purchasing the equipment at inflated prices through a single supplier.
54. On or about November 2000, Jerry M. Fowler and Pasquale Ricci pleaded guilty to accepting kickbacks through a conspiracy to purchase and replace parts for the voting machines from David Philpot of Election Services, Inc., Phil Foster of Sequoia, and other parties.
55. *In re Scott*, 805 So. 2d 137, 139 (La. 2002), the Respondent Hal Scott testified that Jerry Fowler suggested an illegal bidding scheme for dryage warehouse contracts to store voting machines, when he brought up his concerns, Fowler said "not to worry because ***that was the way things were being done around the state***." (emphasis added)
56. In 2001, Fowler was sent to prison. Phil Foster, who had provided testimony under compulsion in the Fowler case, had been granted immunity from prosecution as detailed in *State v. Foster*, 845 So. 2d 393 (La. Ct. App. 2003). He continued to work for Sequoia and then went on to work for DOMINION VOTING SYSTEMS, INC. and worked with Louisiana election officials until 2018 when he passed away.
57. In 2011, an audit was performed by the EAC of Louisiana's election department. The audit found that various items were missing, including laptops and AVC voting machines.

[21] "Louisiana Secretary of State Kyle Ardoin will not seek re-election" WAFB Staff, 11 April 2023, https://www.wafb.com/2023/04/11/louisiana-secretary-state-kyle-ardoin-will-not-seek-reelection/

58. On or about October of 2016, a private voting machine used by the Jefferson Parish Registrar of Voters was reported by Robert Evans to the Department of Justice and the FBI.

59. On 9 August 2018, after a Request for Proposal to purchase new election systems, the Louisiana Department of State announced their intent to award a voting machine contract with Dominion and "full replacement costs for Louisiana could be as high as $90-95 million."[22]

60. On 23 August 2018, Election Systems and Software filed a formal protest with the State Procurement office, objecting to the bidding procedures.

61. On 28 November 2018, the Louisiana Office of State Procurement rescinded the award for a contract between DOMINION and the Louisiana Secretary of State for $95 Million dollars.[23]

62. On or about December 2018, ARDOIN received a $5,000 donation from Courtney Leindecker of KnowInk LLC, a firm that does business with Dominion Voting Systems, Inc.

63. On 14 October 2023, the State of Louisiana held an election for 175 offices. Two different elections were contested and recounts were held. In one particular case, the election for the Sheriff of Livingston Parish between two candidates was decided of 14 October 2023 by 115 votes. The incumbent Jason Ard received 17,565 votes to the challenger Brett McMaster's 17,541 votes.[24]

64. A recount was requested, but the only votes that were recounted were the 2,102 absentee ballots received[25]. This is because the AVC Advantage voting system used by Livingston Parish only "prints a paper printout of candidate totals."[26] Therefore; the race was actually

---

[22] Secretary of State, "Intent to Award Voting Machine Contract Announced", 9 August 2018, https://www.sos.la.gov/OurOffice/PublishedDocuments/080918VotingMachineIntentToAward.pdf

[23] Melinda Deslatt, Associated Press, 29 November 2018, https://www.houmatoday.com/story/news/2018/11/29/decision-upheld-to-scrap-louisiana-voting-machine-contract/8007803007/

[24] Daniel Brown, Unfiltered With Kiran, 17 October 2023, https://unfilteredwithkiran.com/recount-requested-in-livingston-parish-sheriffs-race-jason-ard-brett-mcmasters/

[25] Government of Louisiana, Early Voting Statistics by Parish, 22 October 2023 https://www.sos.la.gov/ElectionsAndVoting/Pages/EarlyVotingStatisticsParish.aspx

[26] Verified Voting, Sequoia Voting Systems, AVC Advantage, Summary, https://verifiedvoting.org/election-system/sequoia-dominion-avc-advantage/

decided by a recount that included only 5.97% of the total vote.[27] The AVC Advantage voting system was manufactured in 1990 and is used in federal elections in the State of Louisiana. This system is not compliant with the requirements of the Help America Vote Act of 2002.

## FOREIGN AGENTS AND MONOPOLIES

65. DOMINION was founded by JOHN POULOS in 2003 in Toronto, Ontario, Canada.
66. On 19 May 2010, DOMINION announced that the firm had acquired Premier Election Services when ES&S was forced to divest the firm in the wake of an antitrust suit brought by the Department of Justice, see *United States and Plaintiff States v. Election Systems and Software, Inc.* No. 10-cv-00380 (D.D.C. 2010).[28]
67. On 4 June 2010, DOMINION announced that the firm had acquired Sequoia Voting Systems. At the time "Sequoia's DRE and optical scan election systems serve approximately 26 million U. S. voters, including… the State of Louisiana."[29]
68. Employees of DOMINION include Goran Obradovic, a chief programmer who also oversees the Serbian branch of operations of the firm, Jean-Pierre Kingsley, former Chief Elections Official of Canada until 2007 and Kay Stimson, former Chief Counsel for the Secretaries of State Association for 17 years, and until the end of 2018, Phil Foster, formerly of Sequoia and Diebold, was an employee.
69. In September 2009, there were essentially four election firms divvying up ownership of the U.S. voting market. A rough breakdown was 40% ES&S, 30% Diebold/Premier, 20% Sequoia, 10% Hart-Intercivic.
70. In June 2010, following the Department of Justice intervention and the acquisitions by Dominion Voting Systems of Diebold, Premier, and Sequoia the market breakdown was 50% DOMINION, 40% ES&S, and 10% Hart-Intercivic.

---

[27] There were a total of 95,032 absentee ballots statewide. If requested, a recount for the Governor's election would have been done with these ballots, or rather 8.94% of all "recorded" votes included in the election results.

[28] Dominion Voting Systems, Press Release, 19 May 2010, https://www.bradblog.com/Docs/DominionAcquiresPremierReleaseFinal4_051910.pdf

[29] Brad Friedman, Huffington Post, "EXCLUSIVE: On Heels of Diebold/Premier Purchase, Canadian eVoting Firm Dominion Also Acquires Sequoia, Lies About Chavez Ties in Announcement" 22 June 2010, https://www.huffpost.com/entry/exclusive-on-heels-of-die_b_620084

71. A 2019 the market had shifted once again, with ES&S having approximately 50% of the market for voter technology in the United States, Dominion with 30%, and Hart-Intercivic was around 15%[30]. The balance continues to shift between these three firms.

72. There is a long history of litigation between DOMINION, ES&S, and SMARTMATIC regarding intellectual property and ownership. In *Connolly, Chapter 7 Trustee v. Dominion Voting Systems Corporation*, 12-01757, (Bankr.D. Colo. 2012) the case involved Dominion Voting Systems Corporation, Dominion Voting Systems, Inc and Sequoia Voting Systems, Inc. *In re: SVS Holdings, Inc.*, 1:17-cv-00061, (D. Colo. 2017) involved Sequoia Voting System, Inc., Dominion Voting Systems Corporation, and Dominion Voting Systems, Inc. In *Smartmatic USA Corporation v. Dominion Voting Systems Corporation*, 1:13-cv-02949, (D. Colo. 2013) the case involved Dominion Voting Systems Corporation, Dominion Voting Systems Inc., Smartmatic International Corporation, Smartmatic Services Corporation, and Smartmatic USA Corporation.

73. In 2018, DOMINION announced that it was being purchased by STAPLE STREET[31], an investment firm run by HOOTAN YAGHOOBZADEH and STEPHEN D. OWENS, both of whom were formerly employed by Cerberus Capital Management and The Carlyle Group. Louisiana's Business Registration website show that they were listed as officers of DOMINION since 2015.[32]

## COUNTS ONE, TWO, AND THREE FOR RELIEF

74. The Advocate realleges and incorporates by reference paragraphs 1 through 73 of this complaint as though fully set forth at length.

75. At all times mentioned, defendant ARDOIN, routinely and repeatedly violated 31 U.S.C. § 3729(a)(1) by:

---

[30] Jessica Huseman, Propublica, 28 October 2019, "The Market for Voting Machines Is Broken. This Company Has Thrived in It.", https://www.propublica.org/article/the-market-for-voting-machines-is-broken-this-company-has-thrived-in-it

[31] Dominion Voting Systems, 16 July 2018, https://www.prnewswire.com/news-releases/dominion-voting-systems-acquired-by-its-management-team-and-staple-street-capital-300681752.html

[32] Louisiana Secretary of State website, Dominion Voting Systems, Inc. Business Registration, https://coraweb.sos.la.gov/commercialsearch/CommercialSearchDetails.aspx?CharterID=897143_A6A187DC80

a. Knowingly and willfully present, and caused to be presented, false, fraudulent, and fictitious claims for payment or approval to the Government of the United States, dependent upon the compliance of section 301 of the Help America Vote Act, with actual knowledge that such claims were to be used contrary to the conditions listed contrary to the provisions of 31 U.S.C §3729 (a)(1)(A).
b. Knowingly and willfully made, used, and cause to be made and used, false records and statements material to a false and fraudulent claim dependent upon the compliance of section 301 of the Help America Vote Act, with actual knowledge and reckless disregard of the truth that such funds were to be used contrary to the conditions of such payment contrary to the provisions of 31 U.S.C §3729 (a)(1)(B).
c. Knowingly and willfully made, used, and caused to be made and used, a false records and statement material to an obligation to pay or transmit money or property to the Government, and knowingly and willfully conceal such information to improperly avoid or decrease an obligation to pay or transmit money or property to the Government, with actual knowledge that such agreements and contracts were contrary to the requirements of the law and provisions of 31 U.S.C §3729 (a)(1)(E)

76. The Advocate is informed and believes, and upon such information and belief alleges, that as a result of the defendant's fraudulent misconduct, the Government was damaged in excess of $13,518,487. This does not include the damage done to the people of the state of Louisiana when considering bond proposal votes and elections decided by only partial recounts.
77. As a result of defendant's conduct, defendant is liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent misconduct alleged above.
78. As a result of defendant's misconduct, 31 U.S.C. § 3729(a) provides that defendants are liable to the Government for civil penalties between $5,000 and $10,000 for each such false and fraudulent claim for payment.
79. The Advocate is also entitled to recover attorney's fees, costs and expenses from defendants pursuant to 31 U.S.C. § 3730(d).

## COUNT FOUR

80. The Advocate realleges and incorporates by reference paragraphs 1 through 73 of this complaint as though fully set forth at length.
81. Defendants ARDOIN and DOMINION VOTING SYSTEMS, INC did not retain and preserve for a period of twenty-two months from the date of the 8 November 2022 Louisiana federal election contrary to the provisions of 52 U.S.C. § 20701.
82. As a result of defendant's conduct, defendant is liable to the Government for three times the amount of damages sustained by the Government as a result of the false and fraudulent misconduct alleged above.
83. As a result of defendant's misconduct, 52 U.S.C. § 20701 provides that defendant ARDOIN is liable to the Government for civil penalties of not more than $1,000 or imprisonment for not more than one year, or both.
84. The Advocate is also entitled to recover attorney's fees, costs and expenses from defendants pursuant to 31 U.S.C. § 3730(d).

## COUNT FIVE

85. The Advocate realleges and incorporates by reference paragraphs 1 through 73 of this complaint as though fully set forth at length.
86. Defendants ROBERT KYLE ARDOIN and DOMINION VOTING SYSTEMS, INC has willfully and knowingly presented, and caused to be presented, materially false, fictitious, fraudulent statements and representations in violation of 18 U.S.C. § 1001 (a)(2)
87. The Advocate is informed and believes, and upon such information and belief alleges, that as a result of the defendants' fraudulent misconduct, the Government of the United States, the State of Louisiana, the city of New Orleans, and the people of the United States have been damaged by continual false information regarding the elections systems of Louisiana.
88. The Advocate is also entitled to recover attorney's fees, costs and expenses from defendants.

## PRAYER FOR RELIEF

WHEREFORE, the Advocate and *Qui Tam* Relator respectfully prays for relief as follows:

1. Treble the Government's damages according to proof.
2. Civil penalties according to proof;

3. A Relator's award of up to 30% of the amounts recovered by or on behalf of the Government;
4. Fees, expenses, and costs;
5. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Advocate and *Qui Tam* Relator hereby requests a trial by jury.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: 17 November 2023

Respectfully Submitted,

Danilo Augusto Feliciano
1313 New York Ave NW
Basement
Washington, DC 20005
202-505-1841
daniloafeliciano@gmail.com
*In propria persona*

**EXHIBIT 6**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. DANILO AUGUSTO FELICIANO,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT KYLE ARDOIN, et al.,<br><br>Defendant. | Civil Action No. 23-3467 (CJN)<br><br>UNDER SEAL |

**UNITED STATES' NOTICE OF DECLINATION AND SUGGESTION OF DISMISSAL**

Pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3730(b)(4)(B), the United States respectfully notifies the Court that it hereby declines to intervene in this action. Additionally, the United States suggests that the Court dismiss this action because the Relator is proceeding in this False Claims Act matter *pro se*, in contravention of the law of the D.C. Circuit and every other appellate court to consider the issue.[1] The United States further suggests that this Court dismiss counts four and five of Relator's complaint with prejudice, as those are premised on criminal remedies for which there is no *qui tam* provision or private right of action.

A proposed order accompanies this filing.

**I. *Pro se* Relators Cannot Litigate False Claims Act Causes of Action on Behalf of the United States.**

Relator filed this matter, *pro se*, under seal in 2023. To the United States' knowledge, the Relator has not been represented by counsel at any point during this litigation. Prior to declination,

1 In the event Relator retains counsel, the United States reserves the right to dismiss the case on any other available grounds, including the public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), and under 31 U.S.C. § 3730(c)(2)(A).

the United States advised the Relator that if he did not obtain counsel, his case was subject to dismissal. The United States now suggests that the case be dismissed on that basis.

It is well-accepted that a *pro se* relator may not pursue a False Claims Act suit on behalf of the government. The D.C. Circuit has held at least four times that a relator "may not pursue pro se [a] qui tam action under the False Claims Act." *United States ex rel. Lovern v. Deutsche Bank Trust Co. Ams.*, 2015 WL 2226230 (D.C. Cir. May 6, 2015) (per curiam); *see also Jones v. Jindal*, 409 Fed. App'x 356 (D.C. Cir. Feb. 10, 2011) (per curiam) ("a pro se plaintiff may not file a *qui tam* action pursuant to the False Claims Act."); *Segelstrom v. Citibank, N.A.*, 617 Fed App'x 4 (D.C. Cir. Sept. 18, 2015) (per curiam) (district court "correct held that pro se plaintiffs . . . may not file a qui tam action pursuant to the False Claims Act"); *Stevens v. Dep't of Health & Hum. Servs.*, 377 F. App'x 16 (D.C. Cir. Apr. 23, 2010) (per curiam) ("pro se plaintiffs may not file a qui tam action pursuant to the False Claims Act").

Indeed, every circuit court to address whether *pro se* relators could proceed with a False Claims Act case following declination has concluded that they may not do so. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008); *Gunn v. Credit Suisse Grp. AG*, 610 F. App'x 155, 157 (3d Cir. Apr. 21, 2015) (per curiam); *Wojcicki v. SCANA Corp.*, 947 F.3d 240 (4th Cir. 2020); *United States ex rel. Brooks v. Ormsby*, 869 F.3d 356, 357 (5th Cir. 2017); *United States ex rel. Tingley v. 900 Monroe*, 106 F. App'x 466 (6th Cir. Sept. 3, 2004); *Georgakis v. Ill. State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013) ("[T]o maintain a suit on behalf of the government, the relator (as the *qui tam* plaintiff is termed) has to be either licensed as a lawyer or represented by a lawyer"); *United States v. Onan,* 190 F.2d 1, 6–7 (8th Cir. 1951), *rev'd on other grounds*, 556 U.S. 928 (2009); *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1126–27 (9th Cir. 2007); *Timson v. Sampson*, 518 F.3d 870, 873–74 (11th Cir. 2008).

The structure of the False Claims Act permits relators to bring suit on behalf of the federal government. 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government.") In light of this structure, courts have repeatedly observed that it is critical that the interests of the United States be vindicated by learned counsel rather than a *pro se* litigant. As the Fourth Circuit explained:

> a relator cannot pursue a qui tam FCA suit pro se. Though the FCA's "partial assignment" of a claim "gives the relator himself an interest in the lawsuit," that right to recovery is inextricably bound up with the Government's interest [citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 772-773 (2000)]. . . . If we were to allow a qui tam plaintiff to proceed pro se, the government could be bound by an adverse judgment in the action. Moreover, because the FCA only allows for one person to bring a qui tam action based on the specific underlying facts, allowing a pro se relator to pursue a claim could very well prevent another better-equipped plaintiff from pursuing the claim.

*Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 244 (4th Cir. 2020); *see also, e.g., Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 763 (5th Cir. 2001) ("A relator may make sweeping allegations that, while true, he is unable effectively to litigate, but which nonetheless bind the government, via *res judicata*, and prevent it from suing over those concerns at a later date when more information is available."); *United States ex rel. Lu v. Ou*, 368 F.3d 773, 775 (7th Cir. 2004) ("A rule that limits legal representation (except self-representation) to lawyers operates to filter out frivolous litigation that can redound to the harm of the represented party, especially when as in this case the representative is a volunteer.").

## II. Counts Four and Five of Relator's Complaint Should be Dismissed with Prejudice.

Counts four and five of Relator's complaint purport to seek relief directly under criminal statutes for which Relator has no statutory right nor standing to assert claims. Specifically, count four cites 52 U.S.C. § 20701, which imposes as a criminal penalty a fine or imprisonment for a violation of that statute, and count five cites 18 U.S.C. § 1001, which imposes a fine or

imprisonment for false statements within the jurisdiction of the United States. There is no private right of action or *qui tam* provision under those statutes, and therefore they must be dismissed. *See, e.g., Jean-Baptiste v. Dep't of Just.*, Civ. A. No. 23-2968 (TNM), 2024 U.S. Dist. Lexis 12306, at *3-4 (D.D.C. Jan. 24, 2024) ("private parties lack standing and a cause of action to enforce the criminal law"); *Huang v. Wheeler*, 215 F. Supp. 3d 100, 107 (D.D.C. 2016) ("to the extent [a private party plaintiff] seeks to assert criminal charges. . ., under either state or federal law, [the person] lacks standing to bring these causes of action").

## CONCLUSION

For the foregoing reasons, the United States suggests that the Court dismiss the action based on Relator's *pro se* status. The Court should also dismiss counts four and five with prejudice. A proposed order is submitted with this filing.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN HUDAK
Chief, Civil Division

DARRELL VALDEZ, D.C. Bar # 420232
Assistant United States Attorney
Civil Division
601 D Street, NW
Washington, DC 20530
(202) 252-2507
Darrell.Valdez@usdoj.gov

*Counsel for the United States of America*

**EXHIBIT 7**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
*ex rel.* DANILO AUGUSTO FELICIANO,

Plaintiff,

v.

ROBERT KYLE ARDOIN, *et al.*,

Defendant.

Civil Action No. 23-3467 (CJN)

**UNDER SEAL**

**ORDER**

Upon consideration of the United States' Notice of Declination and Suggestion of Dismissal and the United States having declined to intervene in this action pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(4)(B), it is hereby:

**ORDERED** that the following filings be **UNSEALED**:

a. The Complaint;

b. The United States' Notice of Declination and Suggestion of Dismissal; and

c. This Order.

**ORDERED** that all other contents of the Court's file in this action remain under seal and not be made public or served upon the Defendant;

**ORDERED** that the seal be lifted as to all other matters occurring in this action after the date of this Order;

**ORDERED** that Counts four and five of Relator's complaint are dismissed with prejudice to the Relator and without prejudice to the United States; and

**ORDERED** that all other claims are dismissed without prejudice.

**IT IS SO ORDERED,**

This 29th day of July 2024.

CARL J. NICHOLS
United States District Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th of November 2024, the foregoing restatement of the issues and *Appendix to Plaintiff-Appellant's Brief* was served by hand to:

Clerk of the Court
United States Court of Appeals for the District of Columbia Circuit
333 Constitution Ave, NW, Room 5205
Washington, DC 20001

And by electronic mail to:

Jonathan H. Gold
United States Department of Justice
Civil Division, Fraud Section
Jonathan.Gold@usdoj.gov

Darrell Valdez
Assistant United States Attorney
United States Attorney's Office
Darrell.Valdez@usdoj.gov

Graham White
graham.white@usdoj.gov

Charles W. Scarborough
charles.scarborough@usdoj.gov

Respectfully submitted,

Dañilo Augusto Feliciano
1313 New York Avenue NW
Basement
Washington, DC 20005
202-505-1841
daniloafeliciano@gmail.com
*in propria persona*